417 A.2d 236

**COMMONWEALTH of Pennsylvania**

**v.**

**Kevin O'BRIEN, Appellant.**

Superior Court of Pennsylvania.

Argued July 30, 1979.

Filed Dec. 21, 1979.

John Paul Curran, Philadelphia, for appellant.

Harry Tischler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.[*]

WATKINS, Judge:

This is an appeal from the Court of Common Pleas of Philadelphia County, Criminal Division, by the defendant-appellant, Kevin O'Brien, from an order entered after a hearing, which denied defendant's Petition to Withdraw his Guilty Plea.

Defendant was arrested on February 6, 1976 for the murder of Lt. Commander John O'Connor, U.S.N., which

[*] Justice Louis L. Manderino of the Supreme Court of Pennsylvania and Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

occurred in the victim's apartment in Philadelphia on February 5, 1976. On July 22, 1976, defendant, represented by an attorney who had tried between 100–150 homicide cases during his career, entered an open guilty plea to the charges of murder and robbery. He was convicted of second degree murder and robbery pursuant to his plea, on July 23, 1976, after two days of testimony which consisted of 229 pages of transcribed testimony. A pre-sentence report was then ordered by the trial court and subsequently completed. On November 8, 1976, appellant was sentenced to life imprisonment on the second degree murder conviction and to a consecutive 10–20 year sentence on the robbery conviction. Subsequently, defendant filed a motion to withdraw his guilty plea. After a hearing held on November 9, 1977, at which defendant's father and defendant's trial attorney testified the court refused to grant the petition to withdraw the plea. Defendant then took this appeal.

On appeal, defendant claims that the trial court abused its discretion in refusing to permit him to withdraw his plea alleging that defendant's trial attorney led him to believe that he would be hospitalized if he pled guilty and that therefore defendant's plea was induced by a promise, that defendant was under the influence of drugs at the time of his plea, and that defendant was incompetent of understanding what he was doing when he pled guilty.

On February 26, 1976, at defendant's arraignment, a motion made by defendant's trial counsel requesting a psychiatric evaluation of defendant was granted. A psychiatric evaluation of defendant was then performed and a report thereof made to the trial court. The report stated in conclusion that "both from a psychological and psychiatric point of view this man [the defendant] is competent to stand trial on the present charges." Since the court below had this report available to it at the time of the plea it had sufficient evidence to disregard defendant's assertions to the effect that he was incompetent to stand trial. Relief will be granted in such a situation only to correct a manifest injustice. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592

(1973); *Commonwealth v. Rosmon,* 477 Pa. 540, 384 A.2d 1221 (1978). Since defendant did not petition to withdraw his plea until after sentence was imposed and because the court below had before it sufficient evidence of defendant's competency to understand the nature of the proceedings we hold that the court did not err when it found defendant competent at the time he entered his plea.

■ Defendant also claims that he was induced to plead guilty by his trial attorney's promises to him that he would receive hospitalization if he pled guilty. At the November 9, 1977 hearing defendant's attorney testified that he never made such a promise to the defendant or to his father. He merely stated that if he [the attorney] were the trial judge he would order defendant hospitalized. He never represented to them that the trial judge would do so. We hold that under these circumstances no promise had been made to defendant regarding this claim. The record of the guilty plea colloquy also belies this contention as the court below was extremely careful in ascertaining of defendant whether any promises had been made to him and the defendant replied in the negative.

Defendant also alleges that he was unaware of what was happening on the day of this plea. Defendant's attorney and father both testified that defendant was "lethargic" or appeared to be "doped up" on the date of the plea. Neither defendant's attorney nor his father communicated their impressions of such to the trial judge at the time of the plea. Defendant's attorney also testified that he was extremely busy at the time of defendant's plea, that he was in the process of moving his offices at that time and that had he not been so engaged that it was "possible" he might have advised his client not to enter the guilty plea. However, the attorney admitted that he was not mentally incompetent on the day of the plea and admitted that the pressures of his other work and his moving did not prevent him from rendering a proper opinion regarding the matter to his client and his parents. The attorney also admitted that he had no knowledge of defendant being under the influence of alcohol

or any drug or medication on the day of the guilty plea. He also admitted that he had conferred with the defendant and his father many times during the proceedings and that he had explained defendant's alternative to him on several occasions. In spite of this the attorney expressed his opinion that defendant did not understand the proceedings on the day of the plea, but he also admitted that his opinion of defendant's condition was a "judgment call" and that other persons could reasonably reach a different conclusion about defendant's ability to comprehend the nature of the proceedings.

Defendant testified at the November 9, 1977 hearing that he had taken Melloril, a drug relaxant, on the morning of the plea. During the guilty plea colloquy, however, he stated that although he had been prescribed Melloril at the prison, he had not taken any on that date and therefore was a little nervous. Despite defendant's claim that he did not know what he was doing when he entered his plea defendant was able, during the colloquy, to give the names and purposes of the medications that had been prescribed for him to state where he lived, to recall the names and locations of the various institutions in which he had been previously held, and to remember the dates of his release. A reading of the record reveals that the court below acted properly and judiciously in accepting defendant's plea. There was no indication other than the opinion of defendant's father and his attorney that defendant did not understand what he was doing when he entered the plea and the psychiatric report and the court's own impressions of the defendant during the colloquy flatly contradict those opinions. This is the classic case of a defendant who has been disappointed by his sentence attempting to withdraw his plea after sentence has been imposed. A misplaced hope for a lighter sentence is not a ground for withdrawal of a plea. *Commonwealth v. Brown*, 242 Pa.Super. 240, 363 A.2d 1249 (1976).

Defendant raises one other issue. In a Petition for Leave to Supplement Issues Raised and Argued on Appeal,

defendant argues that he should not have been found guilty of felony murder pursuant to the holding of Justice Roberts in *Commonwealth v. Spallone*, 267 Pa.Super. 486, 406 A.2d 1146 (1979) whereby it was held that a defendant may not be found guilty of felony murder where the intent to rob a victim is formed after the victim is killed. Defendant did not raise this issue in the court below nor did he raise the issue in his original brief or at oral argument which was held July 30, 1979. Prior to *Spallone*, supra, a long line of cases had held that the felony-murder doctrine applied regardless of whether the defendant's intent to rob the victim occurred prior to the killing or not. See *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Butcher*, 451 Pa. 359, 304 A.2d 150 (1973); *Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971). Defendant argues that the record indicates that defendant killed his victim during a homosexual encounter and robbed him of $51.00 only as an afterthought. However, unlike the situation in *Spallone*, supra, the colloquy judge made no specific finding that the intent to rob the victim was formed after the killing. The colloquy reveals that defendant had little money when he went out on the day of the killing and removed the money from the victim's pants pocket immediately after the killing. These facts do not support defendant's contention that the intent to rob was formed after the killing. In addition, the decision in *Spallone*, supra, is a panel decision of the Superior Court and would not have the effect of overruling the *Perkins*, supra, line of cases. Finally, since defendant failed to raise this issue in the court below he has waived it since we cannot consider an issue for the first time on appeal. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). For all these reasons we hold that *Spallone*, supra, does not apply to this case and we affirm the decision of the court below in denying defendant's Petition to Withdraw his Guilty Plea.

Order affirmed.

This decision was reached prior to the death of MANDERINO, J.