[842 NE2d 15, 808 NYS2d 130]

In the Matter of KADEEM W., a Person Alleged to be a Juvenile Delinquent, Respondent.

Argued October 19, 2005; decided November 21, 2005

*Michael A. Cardozo, Corporation Counsel,* New York City (*Karen Griffin, Elizabeth S. Natrella* and *Leonard Koerner* of counsel), for appellant.

*Legal Aid Society,* New York City (*Judith Stern* and *Steven Banks* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, without costs, and the matter remitted to that Court for further proceedings in accordance with this memorandum.

While not overwhelming, there was legally sufficient evidence to hold Kadeem W. responsible as an accessory for Takim N.'s conduct; therefore, the Appellate Division erred in reversing Family Court's determination for legal insufficiency. We remit the case to the Appellate Division for consideration of the facts, specifically including its weight-of-the-evidence review, and other issues raised but not determined on the appeal to that Court.

G.B. SMITH, J. (dissenting). Because the evidence, viewed in the light most favorable to the presentment agency, could not establish, beyond a reasonable doubt, respondent's commission of the offenses charged, I dissent. I would affirm the Appellate Division order that reversed Family Court's November 2003 order of disposition, vacated Family Court's October 2003 fact-finding order, and dismissed the petition.

By petition filed with Family Court, the Corporation Counsel of the City of New York, the presentment agency, alleged that respondent, who was 13 at the time, committed acts which, if committed by an adult, would constitute nine crimes.[1] The key evidence adduced against respondent consisted of statements he made prior to and after another boy pulled out an air gun and discharged it.[2] The three youths charged had been told to leave a playground that was restricted to residents of the housing complex. Prior to the hidden air gun being pulled out from his companion's waistband, respondent taunted and cursed and, echoing a statement made by one of the other two boys involved in the incident, shouted the following at the security guard: "[You're] a flashlight cop, you don't got a whistle. If anything happen, you can't even get no help." Additionally, after one of the other boys pulled out the concealed air gun and discharged it, that boy said to the security guard, "I told you[,] you can get it." This statement was repeated by respondent and the third boy. After all the boys said, "I told you[,] you can get it" to the security guard, respondent said, "[W]e told you[,] you can get it," fled the scene with the other two boys and lied about the location of the air gun. All three boys stayed together throughout the incident.

Family Court found that respondent, acting in concert with another boy, committed acts which, if committed by an adult, would constitute the crimes of possession of an air pistol, unlawful possession of a weapon by a person under 16, criminal pos-

---

1. Although not stated in the petition, the presentment agency's allegations were based on the theory that respondent committed acts as an accomplice to another person. The crimes alleged were attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [2]); criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]); unlawful possession of weapons by persons under 16 (Penal Law § 265.05); sale or possession of air pistols and air rifles (New York City Administrative Code § 10-131 [b] [1]); menacing in the second degree (Penal Law § 120.14); menacing in the third degree (Penal Law § 120.15); attempted assault in the third degree (Penal Law §§ 110.00, 120.00); reckless endangerment in the second degree (Penal Law § 120.20); and criminal trespass in the third degree (Penal Law § 140.10 [a]).

2. The evidence adduced against respondent will be fully discussed below.

session of a weapon in the fourth degree, menacing in the second degree, and reckless endangerment in the second degree.[3] The Appellate Division reversed Family Court because "the presentment agency failed to adduce legally sufficient evidence that [respondent] shared the intent of his companion [ ] to possess or use the pellet gun which had been concealed beneath [his companion's] clothing."[4] (11 AD3d 626, 627.) This Court now reverses the Appellate Division, concluding that the evidence was legally sufficient to prove respondent committed the acts for which he was found criminally liable.

The test for reviewing the legal sufficiency of evidence is whether " 'after viewing the evidence in the light most favorable to the [presentment agency], *any* rational trier of fact could have found the [acts alleged] beyond a reasonable doubt' " (*People v Contes*, 60 NY2d 620, 621 [1983], quoting *Jackson v Virginia*, 443 US 307, 319 [1979];[5] *see also People v Williams*, 84 NY2d 925, 926 [1994]). Here, the test is not satisfied because the evidence could not establish, beyond a reasonable doubt, that respondent, as an accomplice, committed acts which, if committed by an adult, would constitute the crimes of: (1) possession of an air pistol; (2) unlawful possession of a weapon by a person under 16; (3) criminal possession of a weapon in the fourth degree; (4) menacing in the second degree; and (5) reckless endangerment in the second degree.[6]

---

**3.** Respondent was placed on probation for 18 months and ordered to comply with certain conditions of probation, including completion of 200 hours of community service by November 2004.

**4.** According to respondent's counsel, up until the Appellate Division's ruling, respondent faithfully complied with the terms of his probation. Following the Appellate Division ruling, respondent's counsel, after consulting with and getting authorization from the New York City Department of Probation, advised respondent that he need not fulfill the remaining terms of his probation. After receiving this advice, respondent's mother arranged for respondent to move in with his sister who lived out of state. Respondent currently resides with his sister out of state.

**5.** " 'Legally sufficient evidence' means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]).

**6.** New York City Administrative Code § 10-131 (b) (1) provides that "[i]t shall be unlawful for any person to sell, offer to sell or have in such person's possession any air pistol or air rifle or similar instrument in which the propelling force is a spring or air."

Penal Law § 265.05 provides that "[i]t shall be unlawful for any person under the age of sixteen to possess any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air, or any gun or any instrument or weapon in or upon which any loaded or blank cartridges

In order to prove, beyond a reasonable doubt, that respondent acted with the mental culpability for each of the acts alleged here, the presentment agency had to establish that respondent knew that the other boy had the air gun in his possession before it was pulled out, displayed and discharged. Further, to establish that respondent acted with the mental culpability required for the commission of acts which, if committed by an adult, would constitute the crimes of criminal possession of a weapon in the fourth degree, menacing in the second degree and reckless endangerment in the second degree, the presentment agency was required to prove, beyond a reasonable doubt, that: (1) respondent intended to use the air gun—which had been concealed under another boy's clothing—in an unlawful manner against the security guard; (2) respondent intentionally placed or attempted to place the security guard in reasonable fear of physical injury, serious physical injury or death by displaying the air gun; and (3) respondent recklessly engaged in conduct that created a substantial risk of serious physical injury to the security guard.[7]

Regarding the possession charges, the presentment agency was required to prove, beyond a reasonable doubt, that respondent either possessed or exercised control over the air gun. To

---

may be used, or any loaded or blank cartridges or ammunition therefor, or any dangerous knife."

Under Penal Law § 265.01 (2), "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another."

Under Penal Law § 120.14 (1), "[a] person is guilty of menacing in the second degree when: [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."

Under Penal Law § 120.20, "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

7. "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct" (Penal Law § 15.05 [1]).

"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

establish the additional element that respondent shared the culpable mental state of the boy who actually pulled out and discharged the air gun, the presentment agency was required to show that respondent solicited, requested, commanded, importuned or intentionally aided the other boy in furtherance of the acts alleged (*see* Penal Law § 20.00; *see also People v Hafeez*, 100 NY2d 253, 258 [2003] [a person can be found criminally liable as an accomplice only if he/she shares the culpable mental state with one actually committing the criminal act and renders objective assistance in furtherance of the commission of the criminal act]).

Open expressions of criminal intent by the alleged perpetrator of an act which constitutes a crime are not always available. Accordingly, this Court has held that criminal intent can be inferred from the alleged perpetrator's conduct and the surrounding circumstances (*see e.g., People v Bracey*, 41 NY2d 296, 301 [1977]; *People v Pereau*, 64 NY2d 1055, 1056 [1985]; *People v Smith*, 79 NY2d 309, 315 [1992]).[8] However, where the culpable mental state for the act alleged is recklessness and not intentional conduct, in order to be found liable for acting in concert (under an accomplice liability theory), it must be established, beyond a reasonable doubt, that the alleged accomplice shared in the recklessness of the shooter (*see People v Flayhart*, 72 NY2d 737, 741-742 [1988]).

The presentment agency, relying primarily on this Court's decisions in *Matter of Juan J.* (81 NY2d 739 [1992]), *People v Allah* (71 NY2d 830 [1988]) and *Matter of Wade F.* (49 NY2d 730 [1980]), argues that a factfinder could infer from respondent's conduct and the circumstances surrounding this incident that respondent had the requisite culpable mental states to commit the acts alleged under an accomplice liability theory. However, as there is no evidence that respondent even knew of the air gun's existence prior to it being pulled out, displayed and discharged, there is nothing to support the argument that respondent shared the requisite culpable mental states for the commission of the acts alleged (i.e., acts involving the possession, displaying and discharging of the air gun), or that respondent intentionally aided or provided assistance or encourage-

---

8. In *Smith*, this Court, relying on *Bracey*, stated (at 315), "Often there is no direct evidence of a defendant's mental state and the jury must infer the *mens rea* circumstantially from the surrounding facts." In *Smith*, the mens rea at issue was intent. Accordingly, this Court has only held that the mens rea (i.e., mental culpability) of intent can be inferred from a defendant's conduct, the surrounding facts or the surrounding circumstances.

ment to the other boy regarding that boy's possession, displaying and discharging of the air gun. Specifically, the presentment agency did not put forth evidence that could have allowed a reasonable factfinder to conclude, beyond a reasonable doubt, that respondent knew about the existence of the air gun prior to it being pulled out. Accordingly, it was not proven that respondent possessed or somehow exercised control over the air gun. Further, the evidence could not establish that respondent intended to unlawfully use the air gun against the security guard, or that he intentionally placed or attempted to place the security guard in reasonable fear of physical injury by displaying the air gun. Nor could the evidence support a conclusion that respondent, while failing to perceive a substantial and unjustifiable risk of serious physical injury to the security guard, intentionally aided the other boy in the possession, pulling out, displaying and discharging of the air gun.

Moreover, the cases relied on by the presentment agency are easily distinguishable from the instant case. Each of these cases involves a respondent or defendant who actively participated in the commission of acts that constituted crimes.[9] Here, however, respondent neither possessed nor shot the air gun. Nor did respondent provide assistance or encouragement regarding same. Put another way, the level of assistance and participation in

---

**9.** In *Matter of Juan J.*, a case involving a juvenile delinquent, respondent was charged with acts which, if committed by an adult, would constitute the crimes of second degree robbery and third degree assault. In that case, respondent, and three others, all attacked the victim. Two people held down the victim, another person repeatedly struck the victim with a chain, while the fourth person stole the victim's wallet. Further, all four attackers fled within moments after the wallet was stolen. Based in large part on his continued participation in the beating, and even though there was no direct evidence that respondent took. the wallet or used the chain, respondent was found to have committed the acts alleged.

In *People v Allah*, defendant and his companion, who were both armed with guns, engaged in a heated argument with two other men (named Scott and Greene). During the course of the argument, defendant intentionally aided his companion by shooting Greene in the back when Greene tried to stop defendant's companion from shooting Scott. Because defendant shot Greene, defendant's companion was able to shoot and kill Scott. Based on the circumstances of the case, this Court found that defendant shared a "community of purpose" with his companion.

In *Matter of Wade F.*, respondent, a juvenile delinquent, was found to have committed acts which, if committed by an adult, would constitute first degree robbery based on the position respondent, and two other boys, took in relation to the complainant, the fact that complainant was trapped between all three boys and a car, the time at which respondent took up his position in relation to his companion's threatened use of a razor, and the joint movement of all three boys away from the scene.

furtherance of the acts or crimes present in *Matter of Juan J.,* *People v Allah,* and *Matter of Wade F.* is not present in the instant case.

In sum, respondent's statements during the incident, along with the evidence that respondent fled with the other two boys and lied about the gun's whereabouts after the incident, clearly could not establish, beyond a reasonable doubt, that respondent (1) knew of the air gun's existence before it was displayed, (2) knew of the other boy's plan to display the air gun for the purpose of putting the security guard in fear of harm, (3) intended for the security guard to be fearful of sustaining injury from the other boy's displaying of the air gun, (4) intended for the security guard to be harmed due to the other boy's discharging of the air gun or (5) was reckless during the shooting. As such, the presentment agency did not prove that respondent had the culpable states of mind for the acts alleged. Nor did the presentment agency establish that respondent provided objective assistance in furtherance of the alleged acts. To the contrary, this evidence could establish nothing more than respondent's disdain for the security guard and that respondent was in the presence of the boy who possessed, pulled out, displayed and discharged the weapon.[10]

Accordingly, I would affirm the Appellate Division order reversing Family Court's order of disposition, vacating Family Court's fact-finding order, and dismissing the presentment agency's petition.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur in memorandum; Judge G.B. SMITH dissents and votes to affirm in an opinion.

Order reversed, etc.

---

**10.** Mere presence at the scene of an incident is insufficient as a matter of law to establish accomplice or accessorial liability (*see* Penal Law § 20.00; *see* *People v La Belle,* 18 NY2d 405, 412 [1966]).